<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALLIED MANAGEMENT, INC. and KENNETH FRIEDMAN, *Plaintiffs*, v. LUCID GROUP USA, LLC, *Defendant*. | Civil No.: 2:24-cv-10480 (KSH) (AME) <br><br> <u>**OPINION**</u> |

<u>**Katharine S. Hayden, U.S.D.J.**</u>

**I.      Introduction**

Before the Court is the motion brought by defendant Lucid Group USA, Inc.[1] to compel arbitration and to stay this action pending arbitration. (D.E. 3.) For the reasons set forth below, Lucid's motion will be granted.

**II.     Background & Procedural History**

On or around April 14, 2023, Allied Management, Inc. ("Allied") and Kenneth Friedman ("Friedman")—who appears to be the president of Allied— purchased a 2023 Lucid Air Touring[2] (the "Vehicle") from Lucid for $118,640.00. (D.E. 1-3, Compl. ¶¶ 3, 5 & Exs. A-B.) According to the complaint, Lucid issued to Allied and Friedman (together, "plaintiffs") "several warranties, guarantees, affirmations or undertakings with respect to the material or workmanship of the vehicle and/or remedial action in the event the vehicle fails to meet the promised specifications." (*Id.* ¶ 6.) Plaintiffs submit that "as a result of the ineffective repair attempts

---

[1] Improperly designated as Lucid Group USA, LLC.

[2] Lucid Motors advertises the Lucid Air Touring as a luxury four-door sedan. *See Lucid Air Touring*, Lucid, https://lucidmotors.com/air-touring (last visited May 30, 2025).

1

made by Defendant through its authorized dealer(s), the vehicle is rendered substantially impaired, unable to be utilized for its intended purpose, and . . . worthless." (*Id.* ¶¶ 9-10.) These defects include: "fit and finish of badging, rubber flat over passenger front side tire lose, seatbelt chimes, charge door lack unresponsive to open, driver door latch difficult to operate or does not unlatch, Infotainment Systems Issues to include vehicle connects and loses connection to Bluetooth, navigation issues, [and] echo and hollow sound from phone calls." (*Id.* ¶ 10 & Ex. B.)

The parties' purchase agreement includes a Terms and Conditions of Sale, electronically signed by Friedman on April 18, 2023. (D.E. 3-3, Ex. A, Lucid Order Terms and Conditions of Sale ("TAC") at 5.) This document contains various provisions over four pages, including an arbitration provision. (*Id.* at 3-5.) The arbitration provision broadly provides:

> **11. Disputes, Arbitration, Waiver of Jury Demand**
>
> If either you or we have a dispute, the party raising the dispute will send a written notice of the dispute to the other, along with the requested resolution. You can send your request to us at disputes@lucidmotors.com. If a dispute is not resolved within 60 days, you and we agree that any dispute or claim between you and us or relating in any way to this Agreement will be resolved by binding arbitration, rather than in court, except that either you or we may assert claims in small claims court if the claims qualify. There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages) and must follow this Agreement just as a court would. Claims arising out of or relating to the validity, application, scope, enforceability, or interpretation of this provision (the "Arbitration Agreement") shall also be decided by an arbitrator and will be governed by the Federal Arbitration Act, 9 U.S.C § 1 et seq. ("FAA").
>
> Unless otherwise agreed, the arbitration will be conducted by the American Arbitration Association ("AAA"). The arbitration must be conducted in accordance with AAA's Consumer Arbitration Rules, which are available at www.adr.org or by calling the AAA at 800-778-7879.
>
> […]

> We also both agree that you or we may bring suit in court to: 1) enjoin infringement or other misuse of intellectual property rights; 2) file bankruptcy; 3) enforce a security interest in the Vehicle by repossession; 4) take legal action in court to enforce the arbitrator's decision; or 5) request that a court review whether the arbitrator exceeded the authority granted by this Arbitration Agreement.
>
> […]
>
> *Opt-Out:* You may opt-out of the Arbitration Agreement, within 60 days from the date you accept this Agreement, by sending an email to Optout@LucidMotors.com from the email associated with your order with "Arbitration Opt-Out" in the subject line and indicating your request to optout of the arbitration provision in the body of the email.

(*Id.* at 3-4.) Neither Allied nor Friedman opted out of the arbitration provision. (D.E. 3-1 at 3, D.E. 3-4, Ex. B, Affidavit of Ingrid Robertson at 2.)

On August 19, 2024, plaintiffs sued Lucid in state court, asserting violations of the New Jersey Motor Vehicle Warranty Act, N.J.S.A. 56:12-29, *et seq.* (Count One); the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq.* (Count Two); and the Uniform Commercial Code ("UCC") (Count Three). (*See* D.E. 1-3, Compl.) Lucid removed the complaint based on diversity and/or federal question jurisdiction on November 13, 2024. (D.E. 1.) Two days later, Lucid moved to compel arbitration based on the arbitration provision in the parties' purchase agreement. (D.E. 3.) Plaintiffs opposed (D.E. 7), and Lucid replied (D.E. 10).

### III. Standard of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, strongly favors the enforcement of arbitration agreements, requiring courts "to stay litigation and compel arbitration of claims covered by a written, enforceable arbitration agreement." *Bacon v. Avis Budget Grp., Inc.*, 959 F.3d 590, 599 (3d Cir. 2020) (citing 9 U.S.C. §§ 3, 4). The Third Circuit has adopted a two-tiered framework for assessing motions to compel arbitration, instructing courts to confirm that "(1) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope

3

of the agreement" before granting such motions. *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009)).

"The standard by which a court must conduct this analysis can either be under Federal Rule of Civil Procedure 12(b)(6) (motion to dismiss) or Rule 56(a) (summary judgment)." *Triola v. Dolgencorp, LLC*, 2022 WL 16834579, at *2 (D.N.J. Nov. 9, 2022) (Kugler, J.) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013)). The Rule 56 summary judgment standard applies when "the complaint and its supporting documents are unclear regarding the agreement to arbitrate" or "the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in issue." *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 248 (3d Cir. 2025) (quoting *Guidotti*, 716 F.3d at 776). Under that standard, limited discovery may be warranted if a factual dispute arises, but discovery is not required "when no factual dispute exists as to the existence or scope of the arbitration agreement." *Id.* at 249 (quoting *Young*, 119 F.4th at 319-20).

Where, as here, a complaint does not plainly mention or rely on an arbitration agreement, the Rule 56 standard applies and enables this Court to look beyond the complaint and examine the text of plaintiffs' purchase agreement with Lucid. *See Matczak v. Compass Grp. USA, Inc.*, 2022 WL 557880, at *2 (D.N.J. Feb. 24, 2022) (O'Hearn, J.) (concluding that the Rule 56 standard applies where "the Complaint plainly does not mention or rely upon the arbitration agreement" leaving the court to look "to the documents extraneous to the pleadings and the respective declarations submitted by both parties to determine whether the parties have agreed to arbitrate this dispute"); *Triola*, 2022 WL 16834579, at *3 (finding that the court "must apply the

4

Rule 56 standard because [the] Amended Complaint does not mention the Arbitration Agreement").

Under Rule 56, summary judgment is proper where the movant demonstrates that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-25 (1986). On that showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citing Fed. R. Civ. P. 56(e)). If the nonmoving party fails to meet its burden, summary judgment may be granted against it. *Id.* at 249-50.

## IV.  Discussion

### A. Motion to Compel Arbitration

To grant a motion to compel arbitration, this Court must first be satisfied that the arbitration provision at issue is valid and enforceable. In making these determinations, the Court will look to ordinary principles of state contract law. *Cornelius*, 133 F.4th at 248-49. "Under New Jersey law, '[a]n enforceable agreement requires mutual assent, a meeting of the minds based on a common understanding of the contract terms.'" *Triola*, 2022 WL 16834579, at *3 (quoting *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017)). This requires "the party who gives up rights" to be on notice that they have trial rights and that they are waiving those rights. *Matczak*, 2022 WL 557880, at *4 (noting that "for any waiver-of-rights provision to be effective, the party who gives up rights must have full knowledge of his legal rights and intent to surrender those rights" (quoting *Skuse v. Pfizer, Inc.*, 244 N.J. 30, 48

5

(2020))); *cf. Cornelius*, 133 F.4th at 248 ("Under New Jersey law, no meeting of the minds to arbitrate exists when an agreement provides insufficient notice of the waiver of trial rights.").

Any waiver of rights must be "clearly and unmistakably established," and the waiver of rights provision must "be written clearly and unambiguously." *Skuse*, 244 N.J. at 48-50. An arbitration agreement "will pass muster if it, 'at least in some general and sufficiently broad way . . . explain[s] that the plaintiff is giving up her right to bring claims in court or have a jury resolve the dispute.'" *Triola*, 2022 WL 16834579, at *3 (quoting *Frederick v. Law Office of Fox Kohler & Ass'n*, 852 F. App'x 673, 677 (3d Cir. 2021)); *see also Atalese v. U.S. Legal Servs. Grp., LP*, 219 N.J. 430, 444 (2014) ("Arbitration clauses—and other contractual clauses—will pass muster when phrased in plain language that is understandable to the reasonable consumer.").

Here, the Court finds that the arbitration provision's terms are clear and unambiguous. They provide that "any dispute or claim" between the parties or that relates "in any way to this Agreement will be resolved by binding arbitration, rather in court." (D.E. 3-3, Ex. A, TAC at 3.) The language sets forth that by signing, plaintiffs are waiving court review and a jury demand (*see id.*) and describes how arbitration differs from court review (*id.* ("There is no judge or jury in arbitration, and court review of an arbitration award is limited. However, an arbitrator can award on an individual basis the same damages and relief as a court (including injunctive and declaratory relief or statutory damages) and must follow this Agreement just as a court would.")). The arbitration provision also states that the FAA governs it and provides clear instructions on how to opt out. (*Id.* at 3-4.) The entire terms and conditions agreement is only four pages long, and the "Disputes, Arbitration, and Waiver of Jury Demand" appears as its own

section in bold lettering. (*Id.* at 3.) The arbitration provision thus adequately informed plaintiffs of its terms. *See Triola*, 2022 WL 16834579, at *4; *Matczak*, 2022 WL 557880, at *4-5.

Plaintiffs' claims are also within the scope of the arbitration provision. The warranty and UCC claims easily fall under "any dispute or claim" that relates to the parties' purchase of the Vehicle. And plaintiffs do not raise any factual disputes about the existence or validity of the arbitration agreement, so limited discovery is not required. *See Cornelius*, 133 F.4th at 249-50. Rather, plaintiffs' four-page opposition to this motion raises a single issue: that MMWA claims cannot, in any circumstances, be compelled to binding arbitration. (D.E. 7, Opp., at 2-3.) That argument fails.

Congress passed the MMWA "in response to an increasing number of consumer complaints regarding the inadequacy of warranties on consumer goods." *Davis v. S. Energy Homes, Inc.*, 305 F.3d 1268, 1272 (11th Cir. 2002) (citing H.R. Rep. No. 93-1107 (1974)). To remedy that issue, Congress delegated to the Federal Trade Commission (the "FTC") the authority to prescribe rules that govern the contents of written warranty agreements. 15 U.S.C. §§ 2302(a), 2309-2310. Specifically, Congress declared its intention for the FTC "to encourage warrantors to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute settlement mechanisms [("IDSMs")]." 15 U.S.C. § 2310(a)(1). In 1975, the same year the MMWA was passed, the FTC promulgated minimum requirements governing any "informal dispute settlement procedure which is incorporated into the terms of a written warranty." 16 C.F.R. § 703.1(e). In relevant part, the FTC's regulations aimed to prohibit a warrantor's ability to place legally binding IDSMs in such written warranty agreements. 16 C.F.R. § 703.5(j).

7

Here, the arbitration provision is not contained within a written warranty agreement; it is contained within the terms and conditions of the parties' purchase agreement. The FTC's regulations therefore do not prohibit enforcement of the arbitration provision. Moreover, many federal and state courts have squarely rejected plaintiffs' view that the FTC regulations prevent enforcement of arbitration provisions even when they are contained within warranty agreements. By way of example, in 2021, the New Jersey Appellate Division collected cases and determined that

> the text, legislative history, and purpose of the MMWA do not evince a congressional intent to bar arbitration of MMWA written warranty claims . . . and we are not bound by the "unreasonable" interpretation of the MMWA by the Federal Trade Commission (FTC) . . .which reflects the FTC's "skepticism" toward arbitration . . . and is counter to federal policy favoring arbitration.

*Cervalin v. Universal Glob., Inc.*, 2021 WL 2793593, at *6 (N.J. Super. Ct. App. Div. July 6, 2021) (cleaned up) (citing *Walton v. Rose Mobile Homes LLC*, 298 F.3d 470, 478 (5th Cir. 2002); *Davis*, 305 F.3d at 1273; *Jones v. General Motors Corp.*, 640 F. Supp. 3d 1124, 1141-42 (D. Ariz. 2009)). *See Davis*, 305 F.3d at 1279-80 (finding that the FTC's rationale for its position—protection of consumers—was "no longer valid based on the Supreme Court's abandonment of its hostile attitude toward arbitration"); *Pagano v. NordicTrack, Inc.*, 749 F. Supp. 3d 1183, 1199 (D. Utah 2024) (finding that even if the FTC regulations applied to the parties' contract, "the court would conclude that the FTC's rule does not prevent the enforcement of the parties' arbitration clause"); *but see Lovett v. Beneteau Grp. of Am.*, 2025 WL 1554280, at *15-16 (Del. Super. Ct. May 30, 2025) (finding that the binding arbitration provision contained within plaintiff's written warranty agreement was unenforceable under the MMWA but noting

8

that "[t]he FTC's rule only prohibits binding arbitration where it is incorporated into the terms of a written warranty, which puts it under the reign of the IDSM provision").[3]

Based on the foregoing, the Court finds that the arbitration provision is valid and enforceable and grants Lucid's motion to compel arbitration.

### B. Stay Pending Arbitration

"Section 3 of the FAA provides that issues within the scope of an arbitration agreement shall be referred to arbitration, and that court proceedings shall be stayed" on the application of one of the parties. *Neal v. Asta Funding, Inc.*, 2014 WL 131770, at *3 (D.N.J. Jan. 6, 2014) (McNulty, J.) (citing 9 U.S.C. § 3). Section 3 provides

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . , the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Lucid requested a stay of this action pending arbitration, which is granted.

---

[3] Several months after briefing concluded on Lucid's motion, plaintiffs filed what they describe as a "supplemental brief in opposition" to the motion, and which appears to be a discussion of additional authority plaintiffs seek to have the Court consider in ruling on the motion. (D.E. 11.) Lucid moved to strike the brief and, in the alternative, replied. (D.E. 12.) Plaintiffs proffered authority, *Lovett v. Beneteau Group of America*, does not compel a different result since, as plaintiffs themselves point out, that case considered arbitration clauses contained within written warranty agreements rather than arbitration clauses contained in non-warranty contracts such as the parties' purchase agreement here.

## V. Conclusion

For the reasons set forth above, Lucid's motion to compel arbitration is granted, and the action is stayed pending the arbitration's outcome. A separate order accompanies this opinion.


Dated: June 27, 2025                                                                 */s/ Katharine S. Hayden*
                                                                                                        Katharine S. Hayden, U.S.D.J.